IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

DAVE CAMPBELL and
CATRENIA DAWN CAMPBELL                                          PLAINTIFFS

v.                          Case No. 3:25-cv-00134-KGB

CITY OF MAMMOTH SPRING, *et al.*                                DEFENDANTS

## ORDER

Before the Court is plaintiffs' Dave and Catrenia Dawn Campbell's motion for temporary restraining order against separate defendant Shayne Lee Peterson (Dkt. No. 4). Defendants have not responded to the motion, and the time for doing so has passed. For the following reasons, the Court denies plaintiffs' motion for temporary restraining order (Dkt. No. 4).

I.  **Background**

On June 10, 2025, plaintiffs sued the Mammoth Spring Police Department, the City of Mammoth Spring, Mammoth Spring Police Chief James Edward Turnbough, and Mammoth Spring City Councilman Barry Joseph O'Dell as well as various private citizens and businesses including John Thomas McGinnes, Jody Lee Shackelford, Lauren Elizabeth Siebert, Bragg Broadcasting, Inc., Hallmark Media, LLC, Shayne Lee Peterson, Louise Dunn Alexander, Gary Lee Dunn, Randall Dunn, and Brenda Dunn in Fulton County Circuit Court alleging a variety of constitutional and state law property, contract, and tort claims (Dkt. No. 1, at 5); *see Campbells v. Mammoth Spring Police Dept. et al*, 25CV-25-57 (Fulton County). The City defendants removed the case to this Court (Dkt. No. 1).

The breadth of the claims raised in plaintiffs' complaint need not be addressed in this Order because the subject of their motion for a temporary restraining order is narrow; it involves their neighbors and a 14.5 foot privacy fence. Plaintiffs live in Mammoth Spring, Arkansas, next to Mr.

Peterson and his wife Renetta Peterson, who owns the property next door to plaintiffs at 420 Main Street, Mammoth Spring, Arkansas (Dkt. No. 4, at 1–2). Plaintiffs take issue with a 14.5 foot privacy fence that plaintiffs assert the Petersons placed between their property and plaintiffs' property, suggesting that the fence was built without a proper survey and that the fence is intended to harass plaintiffs (Dkt. No. 5). Plaintiffs seek a temporary restraining order and/or a preliminary injunction asking that Mr. Peterson be prohibited from entering plaintiffs' property, be prohibited from being within 500 feet of plaintiffs, stay on his side of the fence, and be prohibited from contacting plaintiffs except through an agent, by mail, or through a court of law (Dkt. No. 4, at 7). They also ask the Court to order the wall be reduced to 6 feet and to order Mr. Peterson to "concede his fight" as to the property line (Dkt. No. 5, at 41).

Plaintiffs assert that the Petersons have made their lives "downright miserable" (*Id.*, at 1). They argue that the "spite wall is a nuisance and causes [them] to fear for [their] safety," explaining they fear that Mr. Peterson "will lurk into our curtilage" (*Id.*, at 2). They further suggest that the fence is unsafely built, a nuisance that someone may try to climb, and could result in snakes and rats plaguing them (*Id.*, at 22–31).

In support of their motion against Mr. Peterson, plaintiffs highlight encounters with Mr. Peterson. Plaintiffs claim that in December 2023 Mr. Peterson threatened to "whoop" them (Dkt. No. 4, at 5). Plaintiffs video recorded Mr. Peterson's minor children (*Id.*, at 2, 16). Plaintiffs maintain that they did so because they are mandated CASA reporters (Dkt. No. 5, at 34). In response, Mr. Peterson installed three surveillance cameras pointed toward plaintiffs' home (Dkt. No. 4 at 5). Nothing else is said about these events. Plaintiffs allege that in March 2024 someone from the Peterson home made a police report falsely accusing Ms. Campbell of threatening Ms. Peterson (*Id.*). Plaintiffs assert that Mr. Peterson harasses them by driving fast down their shared

alleyway causing "ruts and sparse gravel" (*Id.,* at 5–6).  Finally, plaintiffs maintain that on May 14, 2025, Mr. Peterson called the police believing plaintiffs had moved fence pylons and taken boards (*Id.,* at 6).  Plaintiffs provide a transcript of the body cam video from Mammoth Springs Police Deputy Fountain's video of the encounter (*Id.,* at 12–22).  The officers who reported to the scene advised all parties that their dispute was a property issue that needed to be handled by an attorney and advised everyone involved to stay on their own property (*Id.*, at 16).

**II.     Analysis**

When determining whether to grant a motion for a temporary restraining order, this Court considers:  (1) the likelihood of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between the harm to the movant and the injury that granting an injunction would cause other interested parties; and (4) the public interest.  *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (quoting *Dataphase Sys. Inc. v. CL Sys.*, 640 F.2d 109, 114 (8th Cir. 1981)).  Preliminary injunctive relief is an extraordinary remedy, and the party seeking such relief bears the burden of establishing the four *Dataphase* factors.  *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).  The focus is on "whether the balance of the equities so favors the movant that justice requires the court to intervene to preserve the *status quo* until the merits are determined." *Id.*

Based on the facts alleged, plaintiffs have not shown a threat of irreparable harm from Mr. Peterson to warrant granting a temporary restraining order.  "Failure to show irreparable harm alone is an independent basis to deny injunctive relief."  *Grasso Enterprises, LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016).

At the outset, the Court observes that according to plaintiffs' motion for temporary restraining order, Mr. Peterson is not the the owner of the property at 420 Main Street, Mammoth

Spring, Arkansas. That property is owned by Ms. Peterson. Accordingly, it is unclear to the Court at this stage of the proceedings that the Court has the authority to grant the relief requested by plaintiffs with respect to reducing the size of the fence, given that Mr. Peterson does not own the property.

Plaintiffs assert that they are afraid of Mr. Peterson, but the Court must consider the timing of their request. According to the allegations in the motion, the parties' disputes have been ongoing since at least 2023 (Dkt. No. 5, at 1). According to plaintiffs, they last conversed with the Mr. Peterson on May 12, 2025, but they did not seek the underlying temporary restraining order until June 30, 2025. *See Campbells v. Mammoth Spring Police Dept. et al*, 25CV-25-57 (Fulton County). The Court recognizes that, absent a valid explanation, "delay alone may justify denial of a preliminary injunction." *United States v. Arkansas*, Case No. 4:09-cv-00033 JLH, 2010 WL 1408818, at *4 (E.D. Ark. Apr. 7, 2010). On the record before it, the Court finds that plaintiffs have not offered a valid explanation for their delay in seeking relief. Accordingly, plaintiffs' delay in filing a motion for temporary injunctive relief is viewed by the Court as indicating that plaintiffs will not suffer irreparable harm in having their claims regarding Mr. Peterson and the fence heard in due course as the case progresses. At least at this stage of the proceedings and on the record before the Court, plaintiffs have not shown a threat of irreparable harm necessary to warrant the extraordinary remedy of the Court granting a temporary restraining order.

### III. Conclusion

For these reasons, the Court rules as follows:

1.      The Court determines that plaintiffs have not met their burden at this stage of the proceeding on the record before the Court to obtain a temporary restraining order against Mr. Peterson. The Court denies plaintiffs' application for temporary restraining order (Dkt. No. 4).

2.	The Court determines that this case is closely related to another case recently filed by the same plaintiffs in the Eastern District of Arkansas. In the interest of judicial economy and consistent rulings, the Clerk of Court is directed to consolidate immediately this case with the master docket in *Campbell v. O'Dell*, *et al.*, Case No. 3:25-cv-64-KGB. All future filings by any party in these cases shall be made in the case with the lowest case number, *Campbell v. O'Dell*, *et al.*, Case No. 3:25-cv-64-KGB.

So ordered this 16th day of October, 2025.

_____
Kristine G. Baker
Chief United States District Court Judge